Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael D. Murphy
Christopher J. Bridger
Assistant United States Attorneys
402 E. Yakima Avenue, Suite 210
Yakima, Washington  98901
(509)  454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:22-CR-02041-SAB-1 |
| Plaintiff, | PLAINTIFF'S SENTENCING |
| vs. | MEMORANDUM |
| SUNDRON LARSELL MILLER, | |
| Defendant. | |

The United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Michael D. Murphy and Christopher J. Bridger, Assistant United States Attorneys, submit the following Sentencing Memorandum.

I.    Base Offense Level and Enhancements

The PSIR provides for a total offense level of 32, criminal history category of III, with a guideline range of incarceration 151-188 months to be followed by 7 years of incarceration. Draft PSIR, ECF 107, ¶ 198.  Although making a different sentencing recommendation, the United States does not have any objections to the PSIR.

II.    <u>Departures</u>

The United States seeks an upward departure in this matter or, alternatively, an upward variance pursuant to 18 U.S.C. § 3553(a).  The Guidelines are the starting point and the initial benchmark for the sentencing process.  *Kimbrough v. United States*, 128 S. Ct. 558 (2007).  The Court "take[s] into account the totality of the circumstances" to determine whether a sentence is reasonable.  *Gall v. United States*, 128 S. Ct. 586, 597 (2007). The United States submits that a sentence of 188 months plus 84 months, for a total of 272 months, which would be the top of the guideline range as set forth in the draft PSIR, is not sufficient to address the totality of the circumstances of Defendant's personal characteristics and of the crimes for which he is convicted . If not a departure to a sentence of life imprisonment, then an upward variance to a sentence of life imprisonment is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). Alternatively, the Court should exercise its discretion and sentence Defendant 151 months on Count 1, 84 months consecutive as to Count 2, 27 months concurrently as to Count 3, and 135 months consecutively as to Count 4 for a total of 370 months incarceration followed

by five years of supervised release, as that partially consecutive sentence would better reflect the circumstances of Defendant's crimes and the prolonged and extraordinary nature of his assaults upon the victim.

Defendant pointed A.S.C.'s .308 rifle at her face and pulling the trigger, not knowing the rifle was unloaded, which was an attempt to kill her. His use of the weapon then, as well as later when he placed the barrel of the rifle in the victim's mouth and then struck the buttstock to drive it forward, causing bodily injury, justifies an upward departure pursuant to U.S.S.G. § 5K2.6 (Weapons and Dangerous Instrumentalities). As detailed further below, after Defendant was unable to find ammunition for the rifle and complete a murder, at the urging of co-Defendant Paula Cantu-Lopez and with her assistance, he forced the victim into her own truck, took control of the vehicle and drove back to his residence where he further beat and injured her with the stated intent of killing her. Defendant's persistence in seeking to kill A.S.C. and his actions in restraining and transporting her to accomplish that goal merit upward departures pursuant to U.S.S.G. §§ 5K2.4 (Unlawful Restraint) and  5K2.8 (Extreme Conduct). In sum, Defendant's actions merit a sentence with an upward departure to sentence of life imprisonment.  But for A.S.C.'s practice of ensuring that she did not keep a loaded rifle in her vehicle and her flight from Defendant's residence, she would have been killed by Defendant and his girlfriend.

The Guideline provision for brandishing a firearm during and in relation to a crime of violence is the statutory mandatory minimum. ECF 107, ¶¶ 36, 198. Defendant's offense levels for Counts 1, carjacking, and 4, assault with intent to commit murder, are both increased by, respectively, four and two levels based upon the fact the victim suffered serious bodily injury. *Id.* at ¶¶ 29, 44. However, the manner in which Defendant used the firearm in this case, beating the victim with the rifle until it broke after having earlier pointed it in her face and pulled the trigger, not knowing it was unloaded, is far more significant than many instances of brandishing, which can be accomplished if a defendant "displayed all or part of the firearm, or otherwise made the presence of the firearm known to another person, to intimidate that person, regardless of whether the firearm was directly visible to that person." *See* Model Crim. Jury Instr. 9th Cir. 14.22 (2023). Even though some of the victim's injuries were undoubtedly caused by being struck with hands, fists, a walking stick, and a BB gun in addition to being struck with the rifle, Defendant's violent use of the rifle merits a departure above the guideline to life imprisonment.

A sentence outside the Sentencing Guidelines carries no presumption of unreasonableness. *Irizarry v. United States*, 553 U.S. 708, 714 (2008). Since *Booker*, upon appellate review, "the scheme of downward and upward 'departures' [is] essentially replaced by the requirement that judges impose a 'reasonable' sentence." *United States v. Ellis*, 641 F.3d 411, 421 (9th Cir. 2011). A reasonable sentence under the factors applying to this case under 18 U.S.C. §3553(a) is one of

life imprisonment or, alternatively, 370 months imprisonment followed by five

years of supervised release.

### III.    Sentencing Factors Under 18 U.S.C. §3553(a)

1. The nature and circumstances of the offense and the history and characteristics of Defendant.

A district court may vary upward based on factors already incorporated into the

Guideline calculations.  *United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir.

2013).  In the instant case, Defendant, was convicted following a jury trial of

Carjacking, in violation of 18 U.S.C. §§ 2119, 2,  Brandishing a Firearm During and

in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A), Felon in

Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1),

924(a)(2) and Assault with Intent to Commit Murder, in violation of 18 U.S.C. §

113(a)(1), 1153. ECF 107, ¶ 5. As the Court heard at trial, on December 28, 2021,

Defendant, his girlfriend and co-Defendant Paula Cantu-Lopez, and the victim,

A.S.C.,  went for a in the victim's truck. The uncontradicted testimony of A.S.C. was

that Defendant and Paula Cantu-Lopez got into an argument after smoking "blues"

and that, when she attempted to intervene, they turned on her. Defendant dragged her

out of the driver's seat of her truck and beat her with fists and feet. Paula Cantu-Lopez

joined in. Defendant told Cantu-Lopez to get a gun and he handed him a BB gun,

which he used to strike A.S.C.. He then told Cantu-Lopez to get the real gun, and she

retrieved A.S.C.'s Savage .308 rifle from the truck and gave it to Defendant. He

pointed the rifle and A.S.C.'s face and pulled the trigger. A.S.C. heard the "click" of the empty rifle going off. On discovering the rifle to be unloaded, Defendant and Paula Cantu-Lopez looked for, but were unable to find cartridges. They then decided to take A.S.C. back to their residence to kill her.

Defendant forced A.S.C. into the passenger side of her own vehicle and Paula Cantu-Lopez held her in the vehicle by her hair, from a position in the back seat while Defendant drove the truck. Upon arriving at Defendant's residence, Defendant dragged A.S.C. out of the truck and he and Paula Cantu-Lopez further beat her, using the BB gun and the rifle again. At one point, Defendant placed the barrel of A.S.C.'s .308 rifle in her mouth and then struck the butt stock of the rifle, driving it into her mouth and breaking a tooth as well as causing other injuries. Defendant and Paula Cantu-Lopez dragged A.S.C. up onto a porch of the residence and telling her to stay put while they sought entry from another door. A.S.C. fled from the location and ran to a nearby dwelling for help.



At trial, both Leanda Jim, Defendant's aunt, and Yakama Nation Police Department Officer Gudino testified that A.S.C. looked worse when they first saw her than she did as she appeared in the hospital, as shown here in Government's Exhibit 16, which was also admitted into evidence at trial. When law enforcement arrived at Defendant's

residence, they found the bent BB gun from A.S.C.'s truck, the broken stock of A.S.C.'s Savage .308 rifle, and A.S.C.'s truck as well as blood and marks in the snow from the assault. A.S.C. identified the BB gun at trial, in part by her son's name written on the stock.

As to Defendant's history and characteristics, he is thirty-seven years old and has four children with co-Defendant Paula Cantu-Lopez. ECF 107, ¶¶ 135, 138. However, the most salient characteristic of Defendant to this crime is that at the time he attempted to kill A.S.C., Defendant was subject to a warrant for his arrest for violating conditions of supervised release by failing to report to his probation officer, consuming methamphetamine and fentanyl, and failing to complete in-patient treatment, all occurring in November, 2021. *United States v. Sundron Miller*, 1:17-CR-02020-SAB, ECF 77, 79, Petitions for Warrant or Summons for Offender Under Supervision. Following his actions leading to the current charges, Defendant remained at large until May, 2022. *See* ECF 11, Arraignment/Initial Appearance on Indictment and on Supervised Release Petitions. The conviction for which Defendant was under supervision was for Felon in Possession of a Firearm and he received an initial sentence of forty-six months imprisonment. 1:17-CR-02020-SAB, ECF 43, Judgment. Following his release from custody, Defendant began supervision on October 9, 2020, and committed his first violations of his conditions of supervision almost immediately. *See* 1:17-CR-02020-SAB, ECF 46, Petition for Warrant or Summons for Offender Under Supervision. Defendant's supervised release was

revoked on July 1, 2021, and, after a sentence of five months imprisonment with credit for time served, he was released to in-patient treatment and a thirty-one months of further supervision. 1:17-CR-02020-SAB, ECF 74, Judgment for Revocation of Supervised Release, ECF 76, Corrected Minutes of Revocation of Supervised Release Hearing. Defendant's supervision re-commenced November 3, 2021, and, as noted above, he again began to violate his conditions of supervision almost immediately, ultimately committing the crimes for which he stands convicted in this case less than two months after his release from custody.

Despite receiving a sentence of forty-six months of incarceration for the offense of felon in possession of a firearm, which was at the low end of his guideline range, Defendant failed to comply with supervision or take any advantage of the treatment and services offered and continued to present a danger to society, all of which argues for an upward variance in his sentence. *See United States v. Mumuni Saleh*, 946 F.3d 97, 112 (2d Cir. 2019) (Noting that compliance with institutional regulations during pretrial confinement is not a mitigating factor for sentencing but that continued disrespect of the rules would suggest a greater need to protect the public from further crimes and to deter future criminal conduct); *United States v. Lente*, 759 F.3d 1149, 1173 (10th Cir. 2014) (Mitigation "[e]vidence of childhood trauma, psychological issues, or youthful indiscretion is most powerful when accompanied by signs of recovery"). Defendant absconded from supervision, continued to consume narcotics,

and committing multiple violent crimes against A.S.C. with another firearm and now appears before this Court for sentencing.

2. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.

A.S.C. described suffering extreme pain due to the injuries inflicted by Defendant and testified that she moved out of state following the attack, this even though she is a member of the Yakama Nation. Defendant not only beat the victim and attempted to murder her, he and his partner then forced her into the vehicle and took control of her truck, drove her to his residence, broke out the window of her truck and beat her further with a BB gun and with her .308 rifle. It is hard to conceive of a more serious offense than a prolonged assault in furtherance of the ultimate goal of killing a woman. A life sentence is appropriate to reflect the seriousness of the offense and to promote just punishment. A.S.C.'s self-rescue should not inure to Defendant's benefit.

3. The need for the sentence imposed to afford adequate deterrence to criminal conduct.

Defendant's record on supervised release in 1:17-CR-02020-SAB, in which he repeatedly violated his conditions of supervision despite the prospect of up to three years of additional incarceration in a case for which he had already served a sentence of nearly four years of confinement demonstrates that he cannot be adequately deterred from further criminal conduct.  The United States submits that even a Guideline sentence of 272 months is unlikely to deter Defendant from further crimes

upon release. *See* ECF 107, ¶ 196; *also see Gall*, 552 U.S. at 52 ("[E]very case [i]s a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)). Further, a sentence of life imprisonment would further the goal of general deterrence, addressing the seriousness of both an attempted killing on the Yakama Nation and the violent use of a firearm by a felon prohibited from possessing such weapons.

   4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

   Uncontradicted testimony at trial established that Defendant and A.S.C. had known each other since childhood and that his attack upon her was unprovoked. With his partner, he turned what appeared to be a cordial outing provided by a long-time friend into an afternoon and evening of extended, horrific violence. The contrast between image taken by A.S.C. of Defendant and his partner and co-Defendant, Paula Cantu Lopez, in the afternoon before the assaults, as shown in United States Exhibit 8, admitted at trial and appearing herein, and the image of A.S.C. in the hospital, as shown above, is stark. The Court cannot



expect to protect the public from further violence by Defendant with any sentence short of life in prison.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

A sentence of life imprisonment would provide Defendant with effective correctional treatment, including the Residential Drug and Alcohol Program (RDAP) offered by the Bureau of Prisons (BOP). Further, Defendant would receive medical care for the duration of that sentence. Alternatively, a sentence of 370 months imprisonment followed by five years of supervised release would afford Defendant with adequate correctional treatment. There is indication that Defendant has not obtained a high school diploma or GED and has no specialized vocational training, ECF 107, ¶¶ 134, 156, 158, at least at the time of his previous sentence of incarceration. Given his record on supervised release, it is highly unlikely he has obtained such training during his last federal sentence or while on supervision. A life sentence would provide him with the opportunity for correctional programming to obtain such education.

IV.

GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court impose a sentence of incarceration for life, no criminal fine, the mandatory $400 Special Penalty Assessment, and

mandatory restitution. At the time of the submission of this document, no restitution

requests have been received.

DATED this 31st day of October, 2023.

VANESSA R. WALDREF
United States Attorney

s/Michael D. Murphy
MICHAEL D. MURPHY
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, and a copy was emailed to the counsel of record in this case.

s/ Michael D. Murphy
Michael D. Murphy
Assistant United States Attorney
United States Attorney's Office
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
(509) 454-4425
Fax:  (509) 249-3297